UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ANDREW SCIOCCHETTI,

                                        **Plaintiff,**

      vs.                                                **1:24-CV-878**
                                                        **(MAD/ML)**

VILLAGE OF MENANDS and SERGEANT
AARON ST. GELAIS,

                                        **Defendants.**

---

**APPEARANCES:**                          **OF COUNSEL:**

**TREVOR W. HANNIGAN**                   **TREVOR W. HANNIGAN, ESQ.**
41 State Street, Suite M100
Albany, New York 12207
Attorney for Plaintiff

**GOLDMAN LAW, PLLC**                    **JONATHAN R. GOLDMAN, ESQ.**
372 South Plank Road - Suite 2
Newburgh, New York 12550
Attorney for Plaintiff

**GOLDBERG SEGALLA, LLP**                **JONATHAN M. BERNSTEIN, ESQ.**
8 Southwoods Boulevard, Suite 300
Albany, New York 12211
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

This case was initiated in Albany County Supreme Court on February 15, 2024, by

Plaintiff Andrew Sciocchetti, alleging that Defendants the Village of Menands (the "Village") and

Sergeant Aaron St. Gelais ("Defendant St. Gelais") violated Plaintiff's rights by maliciously

prosecuting him for criminal contempt in the second degree. *See* Dkt. Nos. 1, 2.  Defendants

1

removed the action from state court on July 15, 2024.  *See* Dkt. No. 1.  They filed their answer to

Plaintiff's complaint on July 18, 2024.  See Dkt. No. 5.

Presently before the Court is Defendants' motion to dismiss and for summary judgment.

*See* Dkt. No. 34.  Plaintiff responded in opposition.  *See* Dkt. Nos. 37, 38.  Defendants replied in

further support of their motion.  *See* Dkt. No. 40.

For the following reasons, Defendants' motion is largely denied.  It is granted solely as to

the official capacity claim against Defendant St. Gelais.

## II. BACKGROUND

Along with their motion, Defendants submitted a statement of material facts as required

by Local Rule 56.1.  *See* Dkt. No. 34-15.  Plaintiff responded to Defendant's statement as required

by the Local Rule.  *See* Dkt. No. 37-6 at 1.  The following facts are derived from that response

and the exhibits attached to the parties' filings.

An Order of Protection was issued *ex parte* against Plaintiff and in favor of his now ex-

wife Giavonna Sciocchetti's ("Ms. Sciocchetti") on September 21, 2018, in Schenectady County

Family Court (the "Order of Protection").  *See* Dkt. No. 37-6 at ¶¶ 8, 21; *see also* Dkt. No. 34-7.

On February 19, 2019, Ms. Sciocchetti was the defendant in a trial on a harassment charge in

Menands Village Court.  *See* Dkt. No. 37-6 at ¶¶ 3-4.  During the criminal proceeding, Plaintiff

was in the courtroom.  *See id.* at ¶ 5.  Plaintiff was not a party to the criminal matter.  *See id.* at ¶

6.  Plaintiff contends the complainant in Mr. Sciocchetti's criminal case, "Nicole Roche, and the

prosecutor asked him to be available to potentially testify on behalf of the prosecution."  Dkt. No.

38 at 7.  He states that Ms. Sciocchetti "was then romantically involved with the [father] of

Roche's child, Steven Molinsek," who was the attorney that represented Mrs. Sciocchetti in her

divorce with Plaintiff.  *Id.* at 7-8.  Plaintiff contends that Mr. "Molinsek's law partner was the

same attorney whore represented [Defendant St.] Gelais in his own divorce proceeding." *Id.* at 8. Plaintiff states no problems arose in the courtroom during the trial and no one asked him to leave. *See id.* Plaintiff testified during his deposition that after going to Menands Village Court and waiting outside of the courtroom, the prosecutor informed Plaintiff that he was not going to have Plaintiff testify, so Plaintiff did not "have to wait outside anymore. [He could] come inside . . . ." Dkt. No. 37-4 at 51. The prosecutor told Plaintiff, "If you could sit behind me and then just let me [] know if you hear anything pertinent and pass a note." *Id.*

Defendant St. Gelais is a Sergeant with the Menands Police Department who interviewed Ms. Sciocchetti on February 20, 2019, after she called to complain about Plaintiff being in Menands Village Court during her trial. *See* Dkt. No. 37-6 at ¶ 10. He interviewed her for approximately thirty minutes to an hour. *See id.* at ¶ 13. Defendant St. Gelais "agreed to investigate." *Id.* at ¶ 14. Defendant St. Gelais had Plaintiff's information run through "the NYSPIN data base" which confirmed the existence of the Order of Protection and which was set to expire on March 21, 2019. *See id.* at ¶¶ 15-16. The Order of Protection included "a refrain from contact and a stay away from Ms. Sciocchetti." *Id.* at ¶ 17. Defendant St. Gelais contacted Schenectady County Family Court and obtained a copy of the *ex parte* Order of Protection which showed a full stay away order beginning on September 21, 2018. *See id.* at ¶¶ 19-21. Defendant St. Gelais then spoke to the Albany County Assistant District Attorney who was assigned to Menands Village Court and who, according to Defendants, confirmed that Plaintiff did not have to be in the courtroom on February 19, 2019. *See id.* at ¶¶ 25-26.

Defendant St. Gelais discussed with his supervisor, the police chief, whether to file charges against Plaintiff. *See id.* at ¶ 28. "A Domestic Incident report was completed by Sgt. St. Gelais that contained a statement from Ms. Sciocchetti indicating that [P]laintiff was in the

courtroom while she was present and a full stay away order was in effect." *Id.* at ¶ 30.  Defendant

St. Gelais called Plaintiff on February 22, 2019, and informed Plaintiff that he was going to be

arrested for violating the Order of Protection. *See id.* at ¶ 31.  Defendants assert that, during the

call, "[P]laintiff indicated that he would re-read the order of protection." *Id.* at ¶ 32.  Plaintiff

"[a]dmit[s] this is what [Defendant St. Gelais] wrote in his supporting deposition, nearly three

months after the call, but den[ies] that [P]laintiff indicated he would 're-read the order of

protection.'" *Id.*  Plaintiff subsequently turned himself into the Menands Police Department. *See*

*id.* at ¶ 33.

### III. DISCUSSION

As an initial matter, Defendants seek "summary judgment dismissing the complaint, with

prejudice and on the merits, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and

dismissal of the Amended Complaint for failure to state a claim, pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure[.]"  Dkt. No. 34-1 at 7.  In reciting the facts of the case in their

memorandum of law, Defendants refer the Court to their "Rule 56(a)(1) Statement of Material

Facts for their rendition of the facts and evidence" and state that "[s]ince this motion is also a

motion to dismiss on the pleadings under Rule 12(c) for purposes of this motion to dismiss,

moving [D]efendants take the allegations in the Amended Complaint as true as required." *Id.*

Defendants then recite the applicable legal standards for a motion made under Rule 56 and Rule

12. *See id.* at 10-11.  Defendants move to dismiss Plaintiff's malicious prosecution claim as well

as a due process claim, a First Amendment claim, and a *Monell*[1] claim. *See id.* at 11-21.

Plaintiff "treats Defendants' motion as one for summary judgment" and asks the Court to

do the same.  Dkt. No. 38 at 6 n.1.  Plaintiff clarifies that he "does not assert separate claims for

---

[1] *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658 (1978).

violations of his procedural/substantive Due Process or First Amendment rights, but rather, only asserts claims for malicious prosecution under federal and New York law." *Id.* at n.2. Plaintiff states that "[t]o the extent the Amended Complaint purports to assert claims against [Defendant] Gelais in his official capacity, [Plaintiff] concedes that they are duplicative of his claim against the Village itself, and so any official capacity claim should be dismissed as duplicative." *Id.* at 13, n.5. Plaintiff "also makes clear that he does not assert a *Monell* claim against the Village under Section 1983, . . . [but he] does assert a sate law malicious prosecution [claim] against the Village under principles of vicarious liability." *Id.* at 13-14, n.5 (emphasis omitted).

Insofar as Defendants seek dismissal of purported due process, First Amendment, and *Monell* claims, their motion is denied because Plaintiff did not allege such claims in his amended complaint. *See* Dkt. No. 2. However, the Court grants Defendants' motion to dismiss Plaintiff's claim against Defendant St. Gelais in his official capacity as duplicative of his claim against the Village. *See Malay v. City of Syracuse*, 638 F. Supp. 2d 303, 311 (N.D.N.Y. 2009) ("[T]he 'official capacity' claims against Miguel and Does 1–10 must be dismissed as duplicative because claims against a government employee in his official capacity are treated as a claim against the municipality"); *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008); *Perry v. Vill. of Hillburn*, No. 23-CV-11316, 2026 WL 607808, *6 (S.D.N.Y. Mar. 4, 2026).

Substantively, the Court will treat Defendants' motion as one for summary judgment. "[U]nder Rule 12(c), '[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.'" *Miller v. Lamanna*, 169 F.4th 118, 129 (2d Cir. 2026) (quoting FED. R. CIV. P. 12(c)). "'The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to

state a claim.'" *Id.* (quoting *Lively v. WAFRA Investment Advisory Group, Inc.*, 6 F.4th 293, 301 (2d Cir. 2021)).

"'Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself.'" *Doe v. Syracuse Univ.*, No. 5:18-CV-1100, 2022 WL 798058, *5 (N.D.N.Y. Mar. 16, 2022) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). "However, considering materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* (citation and quotation marks omitted). "A complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Id.* (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (citations omitted). "Even where a document is integral to the complaint, it must be 'clear' that 'no dispute exists regarding the authenticity or accuracy of the document' and that 'there exist no material disputed issues of fact regarding the relevance of the document.'" *Id.* (citation omitted). "'[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (citation omitted); *see* FED. R. CIV. P. 12(d).

Here, in seeking dismissal of Plaintiff's complaint, Defendants submitted a statement of material facts, Defendant St. Gelais's deposition transcript, an affidavit from Defendant St. Gelais, and copies of the documents relied on by Defendant St. Gelais which led to Plaintiff's arrest. *See* Dkt. No. 34-2 at 1-2 (listing the exhibits attached to the motion); Dkt. No. 34-15 (Statement of Material Facts). In response, Plaintiff has submitted a copy of his own deposition transcript as

6

well as an affidavit. *See* Dkt. Nos. 37-4, 37-5. Discovery has been complete since July of 2025, *see* Dkt. Nos. 27, 28, and Plaintiff had a full and fair opportunity to respond to Defendants' motion.

The Court sees no reason, and Defendants have not provided one, as to why their motion should not be considered a summary judgment motion in its entirety. Defendants do not rely solely on Plaintiff's complaint or the documents attached thereto to support its motion. The Court will therefore treat the pending motion as one for summary judgment.

**A.    Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quoting *Donahue v. Windsor Locks Board of Fire Comm'r*, 834 F.2d 54, 58 (2d Cir. 1987)). "[S]ubstantive law will identify which facts are material"; that is, which facts might "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255). "[I]rrelevant or unnecessary" facts do not preclude summary judgment, even when they are in dispute. *Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect

7

to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* FED. R. CIV. P. 56(e). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**B.    Analysis**

According to Plaintiff, he did not know about the Order of Protection. *See* Dkt. No. 38 at 8. Plaintiff avers he was never served with the Order and was unaware of it during the trial at Menands Village Court. *See id.* Plaintiff contends the Menands Police Department did not follow its own policies in charging him with criminal contempt. *See id.* at 8-9. Specifically, Plaintiff cites the follow parts of the Menands Police Department policy on arrests related to domestic violence:

> When completing an incident or arrest report for violation of a court order, officers should include specific information that establishes that the offender has been served, including the date the offender was served, the name of the agency that served the order, and the provision of the order that the subject if alleged to have violated. When reasonably available, the arresting officer should attach a copy of the order to the incident or arrest report. . . .
>
> Officers who are police officers shall make an arrest for certain violations of a duly served order of protection, an order of protection which the defendant has actual knowledge of because the defendant was present in court when such order was issued . . . .

Dkt. No. 38 at 9 (quoting Dkt. No. 37-2 at 5, 8).

Plaintiff contends that Defendant St. Gelais stated during his deposition that he confirmed the Order of Protection had been served on Plaintiff, but that Defendant St. Gelais never

8

documented such confirmation in his investigative or arrest reports.  *See* Dkt. No. 38 at 10. Plaintiff notes that the misdemeanor information that charges him with criminal contempt in the second degree in violation of New York Penal Law § 215.50 did not indicate that Plaintiff knew about the Order of Protection.  *See id.* at 10-11.  After turning himself into the Menands Police Department and attending several court appearances, the Green Island Town Court (to which the case had been transferred) dismissed the charge against Plaintiff on February 27, 2023.  *See id.* at 11; *see also* Dkt. No. 37-3 at 2.  The Town Justice concluded that "[i]n the matter of law, the court has no record or affidavit of service to the defendant of the Order of Protection."  Dkt. No. 37-3 at 2.

Defendants argue that Defendant St. Gelais "unequivocally had probable cause in conducting [P]laintiff's arrest.  There is no dispute that there was a stay away order of protection in place and that [P]laintiff was in the same location of his now ex-wife."  Dkt. No. 34-1 at 12-13. Defendants assert that Defendant St. Gelais "verified the existence of the [O]rder" of Protection, "[P]laintiff knew he had an Order of Protection at that time," and "Plaintiff [] stated in a conversation with Sgt. St. Gelais that he would re-read the [O]rder demonstrating he had it in his possession."  *Id.* at 13.  Defendants contend that because there was probable cause to support the charge, Plaintiff's malicious prosecution claims, fail.

Plaintiff disagrees, arguing that summary judgment must be denied because "a reasonable jury could conclude that [Defendant St. Gelais] lacked sufficient information to believe that [Plaintiff] had actual knowledge of [the] Order, an essential element of the charged offense."  Dkt. No. 38 at 16.

### 1. Malicious Prosecution

To be successful on a malicious prosecution claim, brought pursuant to 42 U.S.C. § 1983, a plaintiff must establish the following five elements:

> "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding,[ ](4) actual malice," and "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."

*Carruthers v. Colton*, 153 F.4th 169, 181 (2d Cir. 2025) (quoting *Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025)).  "[A] § 1983 claim for malicious prosecution is substantially the same as a claim for malicious prosecution under New York law." *Sander v. City of Mount Vernon*, No. 23-CV-6204, 2026 WL 1122401, *7 (S.D.N.Y. Apr. 24, 2026) (citing *Ortiz v. Stambach*, 137 F.4th 48, 61 (2d Cir. 2025)).  However, "[a] claim for malicious prosecution under § 1983 requires the additional element of a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Ndemenoh v. Laperuta*, No. 20-CV-4492, 2025 WL 2773751, *8 (S.D.N.Y. Sept. 26, 2025) (quoting *Tarrant v. City of Mount Vernon*, No. 20-CV-9004, 2022 WL 17070062, *4 (S.D.N.Y. Nov. 17, 2022)) (quotation marks omitted); *see also Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

Here, Defendants argument that Plaintiff has failed to establish a malicious prosecution claim turns solely on the issue of probable cause.  *See* Dkt. No. 34-1 at 11-14; Dkt. No. 40 at 7-9.

"'[P]robable cause is a complete defense to a constitutional claim of malicious prosecution.'" *Carruthers*, 153 F.4th at 181 (quoting *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014)).  "'[P]robable cause to prosecute is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the

10

defendant in the manner complained of."" *Sander*, 2026 WL 1122401, at *7 (quoting *Johnson v. City of N.Y.*, No. 20-CV-3083, 2022 WL 6564685, *11 (S.D.N.Y. Aug. 12, 2022), *R. & R. adopted*, 2022 WL 4364879 (S.D.N.Y. Sept. 21, 2022), *aff'd*, No. 22-2096, 2023 WL 3607219 (2d Cir. May 24, 2023) (summary order)). "In assessing probable cause for a malicious prosecution claim, in contrast to a false arrest claim, courts must 'evaluate suits . . . charge by charge.'" *Carruthers*, 153 F.4th at 181 (quoting *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562 (2024)). "That is, 'probable cause must be shown as to each crime charged in the underlying criminal action.'" *Id.* (quoting *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021)); *see also Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) ("[W]here the issue is whether the officers had probable cause to commence proceedings, we must separately analyze the charges claimed to have been maliciously prosecuted") (citation and quotation marks omitted).

"Although probable cause to prosecute is distinct from probable cause to arrest, 'where probable cause to arrest exists and there are no intervening facts between arrest and initiation of prosecution to undermine that probable cause, claims of malicious prosecution cannot survive.'" *Sander*, 2026 WL 1122401, at *7 (quoting *Caraballo v. City of New York*, 726 F. Supp. 3d 140, 160 (E.D.N.Y. 2024)). "While police officers do not generally [initiate] criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer . . . play[ed] an active role in the prosecution, such as [by] giving advice and encouragement . . . ." *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015). A police officer may also be liable for malicious prosecution if he "creates false information likely to influence a jury's decision and forwards that information to prosecutors, or withholds relevant and material information from the prosecutor." *Barone v. United States*, No. 12-CV-4103, 2014 WL 4467780, *17 (S.D.N.Y. Sept. 10, 2014) (citations omitted); *see also Mitchell v. Victoria Home*,

11

434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006). "In malicious prosecution cases against police officers, plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints." *Mitchell*, 434 F. Supp. 2d at 227 (citing *Llerando-Phipps v. City of New York*, 390 F.Supp.2d 372, 382-83 (S.D.N.Y. 2005)).

Here, Plaintiff was charged with criminal contempt in the second degree in violation of New York Penal Law § 215.50(6), a Class A misdemeanor, through the filing of a complaint signed by Defendant St. Gelais. *See* Dkt. No. 34-10 at 2; Dkt. No. 34-12 at 2.

"'Under New York law, the crime of criminal contempt in the second degree requires that (1) a valid protective order existed, (2) the defendant knew about that order, and (3) the defendant intended to violate the order.'" *Williams v. Suffolk Cnty.*, 284 F. Supp. 3d 275, 285-86 (E.D.N.Y. 2018) (quoting *Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 198 (E.D.N.Y. 2010)); *see also People v. Leonard*, 4 Misc. 3d 814, 817 (Crim. Ct. 2004), *aff'd*, 12 Misc. 3d 135(A) (App. Term 2006) ("To prove defendant's guilt of criminal contempt in the second degree (PL 215.50[3]) as charged in the prosecutor's information, the People were required to prove that defendant intentionally disobeyed a lawful court order of protection which was in effect . . . . The foregoing intent element, of course, requires proof that defendant was aware of the contents of the order of protection").

Defendants argue that they "unequivocally had probable cause in conducting [P]laintiff's arrest. There is no dispute that there was a stay away order of protection in place and that [P]laintiff was in the same location of his now ex-wife." Dkt. No. 34-1 at 12-13. On this point, Plaintiff and the Court agree. *See* Dkt. No. 37-6 at ¶¶ 5, 8. Defendants next contend that Defendant "St. Gelais verified the existence of the order with the NYSPIN report and obtained a

copy from Family Court, [and] interviewed Ms. Sciocchetti[.]" Dkt. No. 34-1 at 13. Again, Plaintiff and this Court agree. It is Defendants' next statements which create a dispute of material fact.

Defendants assert that Defendant St. Gelais "confirmed with Family Court that the order was served on [P]laintiff and confirmed with the [Assistant District Attorney] that he did not need [P]laintiff in the court room . . . . Plaintiff also stated in a conversation with Sgt. St. Gelais that he would re-read the order demonstrating he had it in his possession." *Id.* Defendants argue that "service had nothing to do with the [Defendant] Village as the Order of Protection was issued by Family Court in Schenectady." *Id.* at 13-14.

The criminal complaint signed by Defendant St. Gelais on February 21, 2019, accuses Plaintiff of "intentionally, knowingly, and unlawfully" committing a crime. Dkt. No. 34-10 at 2. The charge requires the "[i]ntentional failure to obey any mandate, process or notice issued pursuant" to specific laws. *Id.* The narrative of Defendant Gelais's incident report as well as the factual allegations in the criminal complaint state that "[o]n February 19, 2019[,] at approximately 2:30 pm while in Menands Village Court, the complainant did observe her ex-husband, [Plaintiff] in the courtroom during a criminal trial. The complainant has an active stay away order of protection from Schenectady County Family Court issued on 09/21/2018 and ending on 03/21/2019." Dkt. No. 34-12 at 3; *see also* Dkt. No. 34-10 at 2. The incident report and complaint are dated February 20 and 21, 2019, respectively. *See* Dkt. No. 34-10 at 2; Dkt. No. 34-12 at 3. Neither document indicates Plaintiff knew about the Order of Protection.

Defendant St. Gelais's basis for the charge against Plaintiff comes from Ms. Sciocchetti's statement. On February 20, 2019, she signed a statement which reads as follows:

13

> Upon entering the courtroom I saw my x-husband sitting approx. 5
> rows back on the right hand side. I sat down beside my attorney
> and asked him if [Plaintiff] could be there as I have a full stay away
> order. [My attorney] said he wasn't certain and then the trial began.
> I saw my x-husband on and off for the duration of the trial. Upon
> the conclusion of the trial, I left the room and noticed he was seated
> in the back. I left the building, got in my car, [and] drove away.

Dkt. No. 34-9 at 3. Ms. Sciocchetti said nothing to Defendant St. Gelais or in her statement about

Plaintiff being served or otherwise knowing about the Order of Protection. *See id.* A police call

log dated February 19, 2019, notes that Ms. Sciocchetti called the Menands Police Department

after the trial and stated that "she never informed anyone in court or MPD" about the Order of

Protection against Plaintiff. Dkt. No. 34-13 at 2. The call logs indicate that Defendant St. Gelais

"advised [Ms. Sciocchetti] would have to speak with court personnel" and that he "spoke to

[Assistant District Attorney] Mike Whetmore" who "stated male party did not have to be there."

*Id.* at 4. The call logs then indicate that, on February 22, 2019, Defendant St. Gelais "spoke to

[Plaintiff] and [he] stated he will be in on 02/26/19 to turn himself in with his attorney." *Id.* at 7.

On February 27, 2019, Plaintiff's then-attorney called for Defendant St. Gelais "regarding

[Plaintiff] turning himself in. Wants details end result." *Id.* at 8. Defendant St. Gelais called the

attorney back and coordinated a time for Plaintiff to turn himself in. *See id.*

Plaintiff turned himself into the Menands Police Department on February 28, 2019. *See*

Dkt. No. 34-13 at 10; Dkt. No. 34-12 at 5. On May 1, 2019, Defendant St. Gelais signed a

deposition in support of the criminal complaint. *See* Dkt. No. 34-8 at 2. In that statement,

Defendant St. Gelais wrote that during his call to Plaintiff on February 22, 2019, Plaintiff

"became belligerent and agitated . . . [Defendant St. Gelais] told him he should re read the issued

Order of Protection that he was issued in Schenectady County Family Court. [Plaintiff] stated he

will reread it and prove [Defendant St. Gelais] wrong." *Id.* In that sworn supporting deposition,

14

Defendant St. Gelais also stated that "[t]here is a recorded audio conversation on 02/22/2019 3:53 pm between myself and Nicole Roche regarding the violation of the stay away order in court by" Plaintiff. *Id.* Defendant St. Gelais's call to Plaintiff in which Plaintiff purportedly said he would "re-read" the Order of Protection was placed "[o]n 02/22/2019 at approximately 3:40 pm." *Id.* That conversation, which took place thirteen minutes before the recorded call with Ms. Roche, was not recorded. There is no other place in Defendant St. Gelais's investigative materials where he indicates that Plaintiff ever alluded to possessing the Order of Protection.

In Defendant St. Gelais's sworn affidavit, which Defendants submitted in support of their summary judgment motion, he attested as follows:

> The NYSPIN reports . . . indicated that [P]laintiff and Giavanna Sciocchetti had orders of protection against one another. The order of protection against [P]laintiff did not expire until March of 2019 and the order of protection against Ms. Sciocchetti did not expire until June 2019 . . . . Considering [P]laintiff wanted Ms. Sciocchetti restrained, there was no reason for him to go to that same location on February 19, 2019, when both orders were still in effect.

Dkt. No. 34-14 at ¶ 6. Defendant St. Gelais did not attest that Plaintiff knew about or was served with the Order of Protection. He also fails to explain why he did not file the supporting deposition, which detailed a call with plaintiff from February of 2019, until May of 2019.

During Defendant St. Gelais's deposition, he testified that he "spoke to Nicole Roche and "[s]he had some concerns that she may have made a mistake in court" because "she asked [Plaintiff] to show up to court." Dkt. No. 34-5 at 24. As to Ms. Sciocchetti, she told him "[t]hat there was a stay away order of protection, and her ex or, soon to be ex was in court the day she had court." *Id.* at 35. Defendant St. Gelais "didn't learn anything else" from Ms. Sciocchetti. *Id.* at 36. Defendant St. Gelais then "contacted Schenectady County Family Court because [he] wanted to be certain there was something in full effect." *Id.* at 48. He did not make any notes

15

regarding his conversation with the family court. *See id.* at 49.  Rather, "[t]he sending of the [Order of Protection] was how [he] viewed it as confirmation." *Id.*  Plaintiff's attorney asked whether Defendant St. Gelais "received any confirmation with the hard copy of the order of protection, that this order of protection was served by any police agency[.]" *Id.* a 50-51. Defendant St. Gelais responded, "I did not." *Id.* at 51.  He "did not" communicate with the Schenectady County Sheriff's Department or "any police agency regarding [] service of this temporary order of protection." *Id.*  Defendant St. Gelais testified that there were no other factors he used in making the decision to arrest Plaintiff. *See id.* at 52.  He stated that when he called Plaintiff to inform him of the arrest, Plaintiff "told [Defendant St. Gelais] he was going to reread it and look it over again." *Id.* at 54.  Defendant St. Gelais agreed that he never received an affidavit of service for the Order of Protection. *See id.* at 55.

Plaintiff's attorney then asked Defendant St. Gelais questions regarding the Menands Police Department's policy related to arrests for domestic violence. *See id.* at 57-59.  Counsel asked, "Did you consult that particular provision of the Menands Police Department policy [regarding service] prior to making the arrest of" Plaintiff? *Id.* at 59.  Defendant St. Gelais responded, "No, I just reached out through family court to confirm that it was served.  When I made the phone call to get the copy, that was the only time I confirmed with them that it was served.  I didn't consult with a police agency." *Id.* at 59-60.  He explained that he "learned, that Schenectady has a very antiquated system.  So it was very kind of just, Oh yeah, it says here it was served." *Id.* at 60.  Defendant St. Gelais requested "copies.  And they couldn't provide me anything.  I actually contacted them a few times.  There was nothing that could be provided to me." *Id.*  Defendant St. Gelais confirmed that during the approximately four years that the

16

criminal case was pending against Plaintiff, he never took "any other steps to try and verify the service of that order of protection[.]" *Id.* at 63.

During Plaintiff's deposition, he explained that at the time of his arrest, he was actively dealing with litigation in Schenectady County Family Court related to Ms. Sciocchetti and their children. *See* Dkt. No. 37-4 at 12-15. He testified that Child Protective Services had filed charges against Ms. Sciocchetti and Plaintiff petitioned for custody of their daughter. *See id.* at 17. Plaintiff stated that Ms. Sciocchetti's "defense was I was arrested, and brought this up and used it against me." *Id.* Plaintiff explained that for his divorce and custody cases, he would receive court notices from his attorney telling him the dates or from the postal mail. *See id.* at 24. Plaintiff testified that he never received the Order of Protection in the mail. *See id.* He stated that he had seen the Order of Protection "in this proceeding here, but not before that." *Id.* at 25. Plaintiff testified that he was represented by an attorney in family court and he did not get any indication from his attorney that the Order of Protection had been filed. *See id.* at 26. He said, "I was never notified through counsel or otherwise." *Id.* Plaintiff further stated that after Defendant St. Gelais called him to inform him of the arrest, Plaintiff contacted his attorney and they "[d]idn't know what they were talking about. Didn't know – [my attorney] did not know, my attorney with Capasso's office, did not know what Order of Protection Sergeant St. Gelais . . . was talking about." *Id.* at 27-28. Plaintiff explained that he thought Defendant St. Gelais's call "was a prank call at first. It wasn't until I went to – got arrested and I was actually given the paperwork." *Id.* at 28. Plaintiff testified that there were two orders of protection from Saratoga County that required Plaintiff and Ms. Sciocchetti to stay away from each other and "also involving [his] kids." *Id.* at 32.

17

As to the trial in Menands Village Court in 2019, in which Ms. Sciocchetti was accused of harassing Nicole Roche, Plaintiff testified during his deposition as follows:

> I was supposed to go and give testimony, so I couldn't go in the courtroom. I had to wait outside on a bench until I was called inside. Then I waited, and then I want to say the District Attorney, I'm not sure if that is his title, it could be Assistant District Attorney, the prosecutor said just sit here and wait, we are talking about in the back. And if Steve Molinsek is going to come and testify, I'm going to have you testify. But if he doesn't come and testify, I'm not going to have you testify. So I said okay. So I had to wait outside. The attorneys meet. I don't know who was in the courthouse. I'm not sure if it was proceedings. I just know I wasn't inside. Then at some point he came to me and said, you know, I'm not going to have you testify. You don't have to wait outside anymore. You can come inside if you want. If you could sit behind me and then just let me know if you hear anything pertinent and pass a note. So I did.

*Id.* at 50-51. He then went into the courtroom and "sat behind" the Assistant District Attorney.

*Id.* at 51.

As to whether Plaintiff told Defendant St. Gelais that he would "reread" the Order of Protection, in a sworn affidavit signed by Plaintiff on October 2, 2025, he stated as follows:

> I understand that, in this action, St. Gelais claims that, during the February 22, 2021[,] phone call, I stated to him that I would 're-read' the Order of Protection. This is false. I did not tell St. Gelais I would 're-read' the Order of Protection or make any other comment suggesting that I was in possession of the document. Again, I expressed to him my confusion over what he was talking about as I was unaware of the existence of the Order of Protection, and I told him this.

Dkt. No. 37-5 at ¶ 3.

Based on all of the foregoing information, the Court finds there is a dispute of material fact as to whether Plaintiff knew about the Order of Protection and intentionally violated it;

18

therefore, there is a dispute as to whether Defendant St. Gelais had probable cause to arrest Plaintiff and file the criminal contempt charge against Plaintiff.

It is disputed whether Plaintiff ever received the Order of Protection. "In cases involving arrests for violating a protective order, courts in this [C]ircuit have found that the arresting officer's awareness of the protective order is itself a significant factor in establishing probable cause." *Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 197 (E.D.N.Y. 2010) (collecting cases).

However, "'[a]n essential element of a prosecution for the crime of criminal contempt in the second degree is that 'the party to be held in contempt must have had knowledge of the court's order.'" *People v. Rubin*, 88 Misc. 3d 1203(A) (N.Y. Just. Ct. 2026) (quoting *People v Roach*, 84 A.D.3d 1734, 1735 (4th Dep't 2011)); *see also People v John*, 150 A.D.3d 889, 889 (2d Dep't 2017) ("The defendant's knowledge of the terms of the order, as opposed to mere issuance of the order, is an essential element of the crime").

Courts have concluded that probable cause existed for an arrest for criminal contempt or that evidence was sufficient to sustain a criminal contempt charge where it was clear that the defendant know about the order of protection. *See Morgan v. City of Utica, New York*, No. 6:20-CV-1424, 2022 WL 14760151, *5 (N.D.N.Y. Oct. 25, 2022) (finding there was probable cause to support the arrest because "Plaintiff was personally served with the order of protection and was present in the Herkimer County Family Court when it was issued*"); People v. K.W.*, 62 Misc. 3d 754, 756 (N.Y. City Ct. 2018) ("Defendant was personally served with a subpoena by a police officer who signed an affidavit of service. She does not dispute her receipt of the subpoena or the manner in which it was served. By such service, knowledge of the order was imputed to defendant"); *People v. Harris*, 72 A.D.3d 1492, 1493 (4th Dep't 2010) (explaining that "a copy of the order of protection bearing defendant's signature was attached to the informations in appeal

19

Nos. 1 and 2, and it is well settled that 'a defendant's name on the signature line of an order of protection adequately supports an allegation that the defendant knew of the order's contents'"); *People v. Inserra*, 4 N.Y.3d 30, 32-33 (2004) ("Here, the supporting sworn deposition of the police officer who took the victim's complaint states that he 'examined a copy of [the] o[r]der of protection and that the defendant's name appears on the line for the defendant's signature'"); *People v. Lapham*, 172 A.D.3d 1634, 1637 (3d Dep't 2019) ("Although defendant did not sign this order of protection, the transcript of this sentencing – which was received in evidence – establishes that defendant was present in court and advised as to the issuance of the order and its relevant contents.  Moreover, a lieutenant with the Clinton County Sheriff's Department testified that, four days later, he personally served defendant with a copy of this order.  Recorded telephone calls between defendant and his mother while he was incarcerated confirmed defendant's knowledge of the subject order, and the victim unequivocally testified that the text messages she received during the relevant time period all came from defendant").

Here, Defendant Gelais did not receive an affidavit of service for the Order of Protection. He did not take any notes regarding his phone call to Schenectady County Family Court.  See Dkt. No. 34-5 at 49, 55.  He testified during his deposition that he "did not" receive any confirmation with the hard copy of the Order of Protection that the Order was served.  Dkt. No. 34-5 at 50-51.  He stated that he did not confirm service with any police agency, despite the Order indicating service was to be performed by the police. *See id.* at 50-51.  Defendant St. Gelais eventually testified that the person he spoke to at Schenectady County Family Court said, "Oh yeah, it says here it was served." *Id.* at 60.  However, Defendant St. Gelais did not indicate this in his investigate notes, in the narrative contained in his incident report, or in the complaint he signed and filed against Plaintiff. *See* Dkt. No. 34-10 at 2; Dkt. No. 34-12 at 3.

20

Likewise, Defendant St. Gelais swore in his supporting deposition in May of 2019, that Plaintiff indicated back in February of 2019 that he would "reread" the Order of Protection. Dkt. No. 34-8 at 2. Plaintiff disputes this in his sworn trial declaration. *See* Dkt. No. 37-5 at ¶ 3. Defendant St. Gelais said nothing about this in his sworn declaration from September 4, 2025. *See* Dkt. No. 34-14. He stated only that "[t]he NYSPIN reports . . . indicated that [P]laintiff and Giavanna Sciocchetti had orders of protection against one another. The order of protection against [P]laintiff did not expire until March of 2019 and the order of protection against Ms. Sciocchetti did not expire until June 2019." Dkt. No. 34-14 at ¶ 6. Defendant St. Gelais attested that "[c]onsidering [P]laintiff wanted Ms. Sciocchetti restrained, there was no reason for him to go to that same location on February 19, 2019, when both orders were still in effect." *Id.* However, that assertion does not establish that Plaintiff knew about the *ex parte* Order of Protection that was issued against him.

Based on the foregoing, it is disputed whether there was probable cause to believe that Plaintiff "violate[d] either a 'duly served' protective order or a protective order of which he . . . ha[d] 'actual knowledge'" and intentionally violated. *People v. Nichols*, 163 A.D.3d 39, 48 (4th Dep't 2018) (citations omitted); *see also People v. Jakubowski*, 42 Misc. 3d 341, 343 (Crim. Ct. 2013), *aff'd*, 55 Misc. 3d 136(A) (N.Y. App. Term. 2017) ("[I]n the criminal context, [i]t is well settled that criminal contempt is established when there is a clear and definite order of the court, the contemnor knows of the order, and he willfully disobeys it") (citation and quotation marks omitted).

Contrary to Defendants' assertion, Defendant St. Gelais's assertion that Plaintiff said he would "reread" the Order is insufficient to grant summary judgment because Plaintiff denies that he made such a statement and it is not for this Court to make credibility determinations at this

21

juncture. *See* Dkt. No. 34-1 at 13; Dkt. No. 40 at 8-9; *see also* Rupp v. Buffalo, 91 F.4th 623, 634 (2d Cir. 2024) ("In considering whether such a fact issue exists, the court is not to make credibility determinations or weigh the evidence").  "When determining whether there was probable cause to arrest for violation of a temporary order of protection, a court should look to whether there is 'undisputed record evidence' sufficient to show a violation." *Britt v. Doe*, No. 3:22-CV-692, 2024 WL 1285224, *3 (N.D.N.Y. Mar. 26, 2024) (citation omitted).  Importantly, "'the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.'" *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)).  Defendant St. Gelais testified that during the four years that the criminal case was pending against Plaintiff, he never sought additional verification that the Order of Protection was served on Plaintiff.  *See* Dkt. No. 34-5 at 63.

Based on the record now before the Court, it cannot conclude that "the 'facts and circumstances . . . would lead a reasonably prudent person to believe the plaintiff guilty" of criminal contempt by *knowingly* violating the Order of Protection.  *Caraballo*, 726 F. Supp. 3d at 160 (quoting *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 243 (2d Cir. 2020)).  As such, Defendant St. Gelais is not entitled to summary judgment on the malicious prosecution claim and Defendants motion is denied.[2]

### 2. Claim Against the Village

Defendants argue that Plaintiff's claim against the Village must be dismissed because Plaintiff has failed to allege an unconstitutional policy or custom that caused him injury under

---

[2] The Court reiterates that, in their motion for summary judgment, Defendants challenge only the probable cause element of Plaintiff's malicious prosecution claim.

*Monell*. *See* Dkt. No. 34-1 at 18-21. However, as already explained, Plaintiff clarifies in his opposition that he has not brought a *Monell* claim but seeks to hold the Village liable under a theory of state law *respondeat superior* liability. *See* Dkt. No. 38 at 13-14, n.5. In their reply, Defendants assert that Plaintiff's claim against the Village still must be dismissed because the claim against Defendant St. Gelais requires dismissal and qualified immunity protects the Village from liability. *See* Dkt. No. 40 at 11.

Insofar as Defendant's rely on dismissal of the claim against Defendant St. Gelais, the Court has concluded that summary judgment is not warranted. Therefore, as the claim against Defendant St. Gelais shall proceed, so shall the claim against the Village. *See Triolo v. Nassau Cnty.*, 24 F.4th 98, 110-11 (2d Cir. 2022) ("New York law is clear that municipalities can be liable for the actions of police officers on false arrest claims under a theory of *respondeat superior*"); *Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 237 (E.D.N.Y.), *on reconsideration*, 47 F. Supp. 3d 152 (E.D.N.Y. 2014) ("Unlike claims brought pursuant to Section 1983, under New York State law, municipalities may be held vicariously liable for false arrest and malicious prosecution under a theory of *respondeat superior*"); *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 502 (N.D.N.Y. 2017); *Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025).

### 3. Qualified Immunity

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Russell v. Scott*, 170 F.4th 83, 93 (2d Cir. 2026) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (additional citation and quotation marks omitted). "In conducting this analysis, [courts] bear in mind that '[q]ualified

23

immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Id.* (quoting *Vega v. Semple*, 963 F.3d 259, 272 (2d Cir. 2020)). "Officials are entitled to qualified immunity unless a plaintiff can show '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Id.* (quoting *Nat'l Rifle Ass'n of America v. Vullo*, 144 F.4th 376, 389 (2d Cir. 2025)).

"'Freedom from malicious prosecution is a constitutional right that has long been clearly established . . . .'" *Ortiz*, 137 F.4th at 69 (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)); *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) ("The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right"); *Ricciuti v. NYC Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997).

"A police officer has qualified immunity from a malicious prosecution claim if the officer had 'arguable probable cause' to charge the plaintiff with the crimes at issue." *Tompkins v. City of New York*, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014) (quoting *Jean v. Montina*, 412 Fed. Appx. 352, 354 (2d Cir. 2011) (summary order)). "Arguable probable cause to charge exists if there was arguable probable cause to arrest the plaintiff for the crimes in question, and no new information learned subsequent to [the] arrest made it manifestly unreasonable for the defendant officer to charge the plaintiff' with [those crimes]." *Id.* (citations and quotation marks omitted). "'Arguable probable cause [to arrest] exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Garcia v. Does*, 764 F.3d 170, 177 (2d Cir. 2014)).

24

"In the qualified immunity context, '[p]re-trial resolution of the defense [of qualified immunity] . . . may be thwarted by a factual dispute.'" *Eaton v. Estabrook*, 144 F.4th 80, 89 (2d Cir. 2025) (quoting *Warren v. Dwyer*, 906 F.2d 70, 74 (2d Cir. 1990)). "'Any disputed questions of material fact—such as the acts of the defendant and their effects on the plaintiff—are to be determined by the factfinder.'" *Id.* at 89-90 (quoting *Walker v. Schult*, 45 F.4th 598, 617 (2d Cir. 2022)).

Here, the dispute of fact concerning Plaintiff's knowledge of the Order of Protection precludes a grant of summary judgment on qualified immunity grounds. As Defendant St. Gelais indicated in the criminal charge he filed against Plaintiff, criminal contempt requires "intentionally, knowingly, and unlawfully" committing the crime. Dkt. No. 34-10 at 2. New York Penal Law § 215.50 prohibits the "[i]ntentional failure to obey any mandate, process or notice issued pursuant" to specific laws. *Id.* Before the Court can determine whether officers of reasonable competence could disagree as to whether there was probable cause to arrest Plaintiff for criminal contempt, the factfinder must first resolve whether Plaintiff knew about the Order of Protection and intentionally violated it by attending the trial in Menands Village Court on February 19, 2019.

As such, Defendants' motion is denied.

### *4. Punitive Damages*

Defendants argue there is no basis for punitive damages because "Sgt. St. Gelais investigated and then decided to make an arrest." Dkt. No. 34-1 at 24. Defendants contend "[t]here is no reckless conduct involved." *Id.*

"'Punitive damages are available in a [Section] 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others.'" *Ortiz*, 137 F.4th at 70 (quoting *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996)). "'To be entitled to an award of punitive damages, a claimant must show "a positive element of conscious wrongdoing."'" *Id.* (quoting *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006)). "'Generally, the issue of whether to award punitive damages is an issue for the jury to decide based on an evaluation of the plaintiff's proof of "sufficiently serious misconduct."'" *Farnsworth v. City of Geneva*, 750 F. Supp. 3d 152, 170 (W.D.N.Y. 2024) (quoting *Phelan ex rel. Phelan v. Torres*, No. 04-CV-3538, 2005 WL 4655382, *15 (E.D.N.Y. Sept. 20, 2005)); *see also Weinberg v. Vill. of Clayton, New York*, 537 F. Supp. 3d 344, 366 (N.D.N.Y. 2021).

As the Court is denying Defendants' summary judgment motion, the Court will not strike Plaintiff's punitive damages claim at this time.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 34) is **DENIED in part and GRANTED in part to the extent set forth herein**;[3] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 2, 2026
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[3] As a result of this decision, Plaintiff's § 1983 and state law malicious prosecution claims against Defendant St. Gelais in his individual capacity and the state law malicious prosecution claim against the Village shall proceed to trial, absent settlement by the parties.